UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID SCOTT HASTINGS,

    Plaintiff,

v.                                             Case No.: 2:18-cv-81-FtM-38MRM

CITY FORT MYERS, DERRICK
DIGGS, STEPHEN B. RUSSELL,
NATALIE K. SAVINO, NICOLAS
MAMALIS, ALESHA MOREL and
TYLER LOVEJOY,

    Defendants.
_____/

## **OPINION AND ORDER**[1]

Before the Court are Defendants Stephen Russell and Natalie Savino's Motion to Dismiss Third Amended Plaintiff's Complaint (Doc. 32), Defendants City of Fort Myers, Derrick Diggs, Nicolas Mamalis, and Alesha Morel's Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 33), and Plaintiff David Hastings' responses (Doc. 35; Doc. 37).

## **Background**[2]

Hastings brings this 42 U.S.C § 1983 case against the City of Fort Myers and several city and state officials. His seven counts stem from an email he sent to three of his adult children, including Chase Hastings, on January 8, 2017. Hastings' first ex-wife

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.
[2] The Court recounts the factual background as pled in Hastings' complaint, which it must take as true to decide whether the complaint states a plausible claim. See *Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

hacked into Chase's email account, forwarded the email to herself, then forwarded the email to Hastings' second ex-wife, Elaine Sirt-Hastings. A Florida state court had enjoined Hastings from contacting Sirt-Hastings. Although Hastings did not send her the email, Sirt-Hastings reported to the Fort Myers Police Department that Hastings violated the no-contact order and submitted the email as proof. Assistant State Attorney Natalie Savino then filed a probable cause affidavit, stating that Hastings violated the no-contact order, which led to an arrest warrant. Hastings was arrested in Idaho and extradited to Florida. The charge was later nolle prossed.

Hastings accuses Savino and two Fort Myers police officers—Nicholas Mamalis and Alesha Morel—of violating his Fourth Amendment rights by using the email to falsely show that he violated the no-contact order (Count 1). He also accuses Savino of violating his due process rights by lying in the probable cause affidavit and overstating to the state court the number of subpoenas Hastings issued in his divorce from Sirt-Hastings (Counts 2 and 5). Hastings does not state what roles Mamalis and Morel played in the investigation, but he claims they were the "legal cause" of the criminal charge and accuses them of malicious prosecution (Count 3). Hastings reported Mamalis and Morel to Fort Myers Police Chief Derrick Diggs, who took no action. Hastings thus sues Diggs for negligence in the supervision, training, and retention of the officers (Count 6). Hastings also sues the City of Fort Myers for negligently hiring, training, and disciplining Mamalis, Morel, and Diggs, and seeks to hold the City vicariously liable for the officers' conduct (Count 7).

After his arrest, Hastings retained two attorneys, but both terminated their representation of Hastings. Hastings believes they did so because of the influence or

intimidation of State Attorney Stephen Russell, who was motivated by a personal vendetta against Hastings. Hastings charges Russell with violating his Fifth, Sixth, and Fourteenth Amendment rights (Count 4).

All defendants have moved for dismissal under Federal Rule of Civil Procedure 12(b)(6). Russell and Savino do not challenge the sufficiency of Hastings' factual allegations but raise Eleventh Amendment immunity, prosecutorial immunity, and qualified immunity. The other defendants mount cursory attacks to the factual sufficiency of Counts 1, 3, 6, and 7.

## Legal Standards

When deciding a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded facts and draw all reasonable inferences in the light most favorable to the non-moving party. "To survive a motion to dismiss, the plaintiff's pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007). A claim is facially plausible when the Court can draw a reasonable inference from the facts pled that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. But "[f]actual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted). Thus, the Court engages in a twostep approach: "When there are well pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff first must allege a violation of a right secured by the Constitution or under the laws of the United States; and, second, allege that the deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998). "[C]omplaints in § 1983 cases must…contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 707 n.2 (11th Cir. 2020) (citation and internal quotation marks omitted). Further, the plaintiff must allege a causal connection between the defendant's conduct and the alleged constitutional deprivation. *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 999 (11th Cir. 1995).

Because Plaintiff is *pro se*, the Court must liberally construe the Amended Complaint. See *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). Courts, however, are not under a duty to "re-write" a plaintiff's complaint to find a claim. *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993). Nor is the Court required to credit a *pro se* plaintiff's "bald assertions" or "legal conclusions" as facts. Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1357 (3d ed. 2013) (noting that courts, when examining a 12(b)(6) motions have rejected "legal conclusions," "unsupported conclusions of law," or "sweeping legal conclusion…in the form of factual allegations.").

**Discussion**

1. <u>Russell and Savino's motion to dismiss</u>

Russell and Savino do not attack the sufficiency of Hastings' factual allegations and instead rely on three immunity defenses. Their motion recites at length general legal

principles of Eleventh Amendment and personal immunity, but it makes almost no attempt to apply those legal principles to the facts here.

### a. Eleventh Amendment Immunity

The Eleventh Amendment protects states from being sued in federal court "by Citizens of another State[.]" U.S. CONST. AMEND. XI. The Supreme Court extended this protection to bar cases brought by a state's own citizens. *Freyre v. Chronister*, 910 F.3d 1372, 1380 (11th Cir. 2018). The Eleventh Amendment protects state officials from being sued in their official capacity, but it does not protect officials from being sued in their individual or personal capacity. *Hobbs v. Roberts*, 999 F.2d 1526, 1528 (11th Cir. 1993). Hastings sues Russell and Savino in both their individual and official capacities—a fact Russell and Savino overlook. Thus, while the Eleventh Amendment bars Hastings from seeking damages from the State of Florida, it does not bar his individual-capacity claims against Russell and Savino.

### b. Prosecutorial Immunity

Prosecutors enjoy absolute immunity to § 1983 actions "for all activities that are 'intimately associated with the judicial phase of the criminal process.'" *Rehberg v. Paulk*, 611 F.3d 828, 837 (11th Cir. 2010) (quoting *Van de Kamp v. Glodstein*, 555 U.S. 335 (2009)). Immunity depends not on the defendant's job title, but on the nature of the function performed. *Id*. Absolute immunity applies to prosecutors' "actions 'in initiating a prosecution and in presenting the State's case." *Id*. (quoting *Imbler v. Pachtman*, 424 U.S. 409 (1976)). This includes statements made during trials and presentation of evidence during a probable cause hearing. *Id*. at 837-38. Prosecutors enjoy qualified immunity—but not absolute immunity—when functioning in a capacity unrelated to their

5

role as advocates for the state. *Id*. at 838. Thus, the Court must examine the alleged actions of Savino and Russell and determine what functions they were performing.

Hastings sues Savino for (1) relying on the hacked email to falsely prove that he violated a no contact order, (2) falsely testifying in a probable cause affidavit that Hastings violated the no contact order, and (3) falsely stating, "under oath," that Hastings harassed his ex-wife by issuing over 400 subpoenas in his divorce case. The Supreme Court's decision in *Kalina v. Fletcher*, 522 U.S. 118 (1997) is instructive. Fletcher sued Kalina, a prosecutor, under § 1983 for commencing a criminal case against him by filing an information, a motion for an arrest warrant, and a probable cause affidavit. *Kalina*, 522 U.S. at 120-21. The Supreme Court found that filing the information and motion were protected by absolute immunity. But by signing the affidavit, Kalina acted as a complaining witness rather than a lawyer, so absolute immunity did not apply to her testimony. *Id*. at 130-31. Applying *Kalina*, the Eleventh Circuit held that the "sworn/unsworn distinction is…determinative." *Rivera v. Leal*, 359 F.3d 1350, 1355 (11th Cir. 2004).

Savino's decision to use the email as evidence in a criminal proceeding is a purely prosecutorial function and thus protected by absolute immunity. The Court will dismiss Count 1 as to Savino. But in Counts 2 and 5, Hastings complains of statements Savino made under oath. She acted as a witness—not a prosecutor. Counts 2 and 5 are not barred by absolute immunity.

Hastings accuses Russell of influencing or intimidating two attorneys into terminating their representation of Hastings and thereby depriving Hastings of his Sixth Amendment right to assistance of counsel. Russell makes no attempt to explain how his

6

alleged conduct related to his function as an advocate for the state. He instead rests solely on the broad and conclusory claim that his actions "were taken in the scope and pursuant to his…duty as a State Attorney[.]" (Doc. 32 at 17). Russell has not shown entitlement to absolute immunity.

### c. Qualified Immunity

"Qualified immunity shields government officials who perform discretionary governmental functions from civil liability so long as their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Rehberg*, 611 F.3d at 838 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Eleventh Circuit employs a burden-shifting approach to the qualified-immunity defense. First, the defendant must show that he or she was acting within the scope of his or her discretionary authority. *Moore v. Pederson*, 806 F.3d 1036, 1042 (11th Cir. 2015). If the defendant satisfies this requirement, the burden shifts to the plaintiff to show that the defendant violated a clearly established constitutional right. *Id.*

Russell and Savino acknowledge that the initial burden falls on them but make no attempt to satisfy it. They instead claim, "it is undisputed that Defendants were acting within the scope of their employment as state officials and that all their actions and omissions are within the scope of their authority." (Doc. 32 at 19). Hastings makes clear in his response that he does in fact dispute whether Russell and Savino were acting within the scope of their discretionary authority. Because Russell and Savino have not met their burden, they are not now entitled to dismissal based on qualified immunity. The Court may revisit the issue at the summary-judgment stage of this case.

2. City of Fort Myers, Diggs, Mamalis, and Morel's motion to dismiss[3]

The City of Fort Myers and its police officers raise no immunity defenses. They instead mount brief and cursory attacks to the sufficiency of Hasting's factual allegations, with almost no citations to legal authority.

*a. Count 1: Unlawful Search and Seizure – Mamalis, Morel, and Savino*

Hastings' first count is based on an alleged violation of his Fourth Amendment right to be free from unlawful searches and seizures. Hastings accuses his first ex-wife of hacking into his son's email account and forwarding an email to his second ex-wife, who delivered the email to the Fort Myers police. Count 1 fails because the Fourth Amendment only protects against government action. It does not apply to searches and seizures by a private individual not acting as an agent of the government or with the participation or knowledge of a government official. *United States v. Sparks*, 806 F.3d 1323, 1334 (11th Cir. 2015). And "the Fourth Amendment does not prohibit law enforcement's subsequent use of that information, even if obtained without a warrant." *Id.*

Hastings does not allege that his first ex-wife acted as an agent of the government when she seized the email, or that she did so with the participation or knowledge of a government official. Mamalis and Morel's later use of the email did not violate the Fourth Amendment because Hastings' expectation of privacy in the email had already been frustrated by his ex-wife. The Court will dismiss Count 1.

---

[3] Hastings submitted several exhibits in response to this motion. The Court has not considered them. See *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir. 2019) ("On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court ordinarily may not look beyond the pleadings.")

### b. Count 3: Malicious Prosecution – Mamalis and Morel

Defendants attack Count 3 by casting it as a claim for civil conspiracy and pointing to Hastings' failure to allege any overt act taken in furtherance of the conspiracy. But, as Hastings points out, Count 3 does not allege a civil conspiracy. Defendants' attack on Count 3 fails.

### c. Count 6: Negligence – Police Chief Derrick Diggs

Hastings charges Diggs with negligently supervising Mamalis and Morel. "Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment." *Asia v. City of Miami Gardens*, No. 14-20117-Civ-COOKE/TORRES, 2016 WL 739656, at *4 (M.D. Fla. Feb. 25, 2016) (quoting *Dep't of Envtl. Prot. v. Hardy*, 907 So. 2d 655, 660-61 (Fla. Dist. Ct. App. 2005)).

According to the complaint, Hastings notified Diggs in writing that Mamalis and Morel used the January 8, 2017 email to falsely accuse Hastings of violating a no-contact order, and Diggs took no action to remediate the situation. Diggs argues that Count 6 is insufficiently pled because Hastings "does not describe with any specificity in what manner Diggs was negligent." (Doc. 33 at 10). The Court disagrees. Hastings alleged that Diggs took no action after Hastings notified him of the conduct of Mamalis and Morel. That inaction can be grounds for negligent supervision.

### d. Count 7: Negligence – City of Fort Myers

Hastings' precise legal theory for Count 7 is difficult to pin down, especially since he conflates different legal theories in his response. Even so, to justify dismissal, the City

must do more than raise a perfunctory, unsupported objection. Here is the City's entire argument: "[Hastings] makes general statements as to the alleged breach of duty on the part of the City and improperly identifies the duties and responsibilities of the City with respect to its interactions with Diggs, Mamalis, and Morel." (Doc. 33 at 10). The Court will not dismiss Count 7 based on such a slapdash challenge.

Accordingly, it is now

**ORDERED:**

(1) Defendants Stephen Russell and Natalie Savino's Motion to Dismiss Third Amended Plaintiff's Complaint (Doc. 32) is **GRANTED in part and DENIED in part**.

(2) Defendants City of Fort Myers, Derrick Diggs, Nicolas Mamalis, and Alesha Morel's Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 33) is **GRANTED in part and DENIED in part**.

(3) Count 1 of the Third Amended Complaint is **DISMISSED**.

(4) Defendants must answer the Third Amended Complaint or before **April 6, 2020**.

**DONE** and **ORDERED** in Fort Myers, Florida this 23rd day of March 2020.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record